## TERRITORY v. PACIFIC AMERICAN FISHERIES.

First Division.   Juneau.   February 9, 1924.

No. 2367–A.

1. Licenses ⬤⇒7(1)—Fish and Fisheries—Taxation—Definition of the Words "a Case of Salmon."

Action by the territory to recover certain graduated license taxes on account of canning salmon; defendant demurs that the statute is indefinite and uncertain, in that the tax is levied per "case of salmon," and does not define what a "case of salmon" is, and there is, therefore, no basis from which the tax may be fixed. *Held*, "a case of salmon" has a well-defined meaning in trade and commerce as "a container of 48 one-pound cans of salmon or its equivalent;" the words have a definite trade meaning, which has been acted upon by defendant for a number of years in paying their license taxes under the laws of Congress applicable to the fish cannery business in Alaska.

2. Abatement and Revival ⬤⇒17—Demurrer That Another Action is Pending for the Same Cause.

That there is another action pending for the same cause is a ground of demurrer, when that fact appears upon the face of the complaint, and not otherwise; to cure that defect in this cause, counsel in their demurrer refer to another action pending, and invoke the aid of this court to examine that action to sustain the

⬤⇒See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

demurrer. That there is another action pending is no ground for demurrer to the complaint, if that fact does not appear on the face of the complaint; that fact does not appear on the face of the complaint, and the demurrer is overruled.

**3. Licenses** ☜**7 (4)—Constitutional Law—Sales—Tax on Fish and Fisheries.**

A license tax on the privilege of doing business, regulated by the amount of sales in Alaska, is not repugnant to the Constitution of the United States.

**4. Commerce** ☜**16, 30, 64—License Tax on Canning Salmon.**

The act of the Legislature of Alaska levying a license tax on the business of canning salmon, graduated by the amount of cases of salmon put up, is not an interference with interstate commerce. The fact that an article is manufactured for export to another state does not make it an article of interstate commerce, and the intent of the manufacturer does not determine the time when the article passes from the control of the state and belongs to commerce.

This is an action brought by the territory to enforce the collection of certain graduated license taxes claimed to be due the territory from the defendant on account of canning salmon during the season 1923. The complaint contains four causes of action, all in the nature of actions for debt, for the amount of the tax, together with a penalty of 10 per cent. thereon for nonpayment, under the provisions of chapter 101, Session Laws of Alaska of 1923.

The defendant in each of the causes of action is a corporation existing under the laws of the state of Maine and authorized to transact business in the territory. For its first cause of action, plaintiff states that subsequent to May 5, 1923, defendant prosecuted the business of canning and packing salmon in Alaska, operating a salmon cannery at Excursion Inlet, Alaska; that during the year 1923 subsequent to May 5, defendant packed and canned at said cannery 8,950 cases of kings, reds, or sockeyes, 48,042 cases of medium red, cohoe, and pink salmon, and 5,879 cases of chum salmon; that by reason of said facts there became due and owing plaintiff from defendant as a license tax on said pack under the provisions of clauses (b), (c), (d), and (f), subsection 8, section 1, chapter 31, of the Session Laws of Alaska of 1921, as amended by chapter 101 of the Session Laws of Alaska of 1923, the following sums:

| | |
|---|---:|
| On kings, reds, or sockeye salmon at 10 cents per case | $ 859.00 |
| On medium reds, cohoes, and pink salmon at rate of 4½ cents per case for 48,042 cases | 2,161.89 |
| An additional 2 cents per case on 15,000 cases | 300.00 |
| An additional 4 cents per case on the remaining 8,042 cases | 321.68 |
| On chums at rate of 3 cents per case for 5,879 cases | 176.37 |

—making total license tax for said salmon pack of $3,818.94; that no part of said tax so due has been paid, except the sum of $3,197.26; that the remaining $621.68 became delinquent on January 15, 1924, and is still due and unpaid, though demanded; and on January 15, 1924, a penalty of 10 per cent. accrued and became due under the provisions of law, and there is now due and owing to the plaintiff the sum of $683.84, with interest at 12 per cent. per annum.

The second, third, and fourth causes of action are in form the same as that above set forth for the first cause of action. The second charges the defendant with operating a cannery at Ikatan, and claims there is due from such operation to the territory for license fees $4,215.20; the third cause of action alleges the operation of a cannery at Kings Cove, and claims there is due the territory from such operation license fees amounting to $1,138.-70; and the fourth cause of action claims there is due the territory from the defendant as license fees on defendant's cannery operations at Port Moller the sum of $3,396.03, making a total claimed to be due of $9,437.89, with 12 per cent. interest from January 15, 1924.

John Rustgard, Atty. Gen., for the Territory.

H. L. Faulkner and R. E. Robertson, both of Juneau, for defendant.

REED, District Judge. To this complaint the defendant has interposed a general demurrer. The grounds of this demurrer are that chapter 31, Session Laws Alaska 1921, as amended by chapter 101, Laws Alaska 1923, is invalid in that it is:

(a) Contrary to the Organic Act of the territory, particularly section 9 thereof.

(b) That it abridges the immunities and privileges of citizens of the United States, contrary to the Fourteenth Amendment.

(c) That it is in violation of the Fourteenth and Fifteenth Amendments to the Constitution of the United States, as depriving defendant of his property without due process of law.

(d) That it denies defendant equal protection of the laws.

(e) That it violates section 8, art. 1, of the Constitution of the United States, as interfering with interstate commerce.

(f) That the taxes so levied are not uniform upon the same class of subjects and are not levied or collected under a general law.

(g) That it grants special privileges, immunities, etc., contrary to the Organic Act.

(h) That the measure is regulatory of the fishing industry and contrary to section 3 of the Organic Act.

(i) That it is an attempt to delegate legislative powers to individuals without authority of law.

(j) That the tax is indefinite and uncertain, and it is impossible to determine the exact method intended by the Legislature for the computation of the tax.

(k) That there is another action pending between the same parties for the same cause: that is, the case of Pacific American Fisheries v. Territory of Alaska and W. G. Smith as Territorial Treasurer, No. 2365–A.

Of these numerous grounds of error, only three were urged by the defendants on the argument. These three are: (1) That the tax is indefinite and uncertain, in that the law does not define what a case of salmon is, and therefore there is no basis from which the tax may be fixed; (2) that the act is a regulatory measure, and not a tax measure for review only, and is therefore in contravention of section 3 of the Organic Act of the territory, forbidding the Legislature to amend the fish laws of the United States; and (3) that there is another action pending between the same parties, involving the same cause.

. In the absence of presentation of the other points involved to the court by the demurring counsel, it may be presumed that counsel does not greatly rely upon them as directly sustaining their contention that the law is void; but some of these contentions deemed by the court most tenable will be touched upon herein.

Considering first the last ground raised, that there is another action between the same parties involving the same cause, attention is called to section 890 of the Compiled Laws of Alaska of 1913, which provides several grounds of demurrer when the grounds of demurrer appear on the face of the complaint. The ground specified by counsel is that there is another action between the same parties to this action for the same cause. This is a ground of demurrer when that fact appears upon the face of the complaint, and not otherwise. In this case it does not appear on the face of the complaint that there is another action pending between the same parties, much less that an action is pending for the same cause. To cure this defect, counsel in their demurrer refer to an action pending, and invoke the aid of the court to examine that action, to sustain the demurrer. That there is another action pending is no ground for demurrer to the complaint, if that fact does not appear on the face of the complaint. The demurrer goes to the sufficiency of the complaint, based solely upon the legal sufficiency of the allegations therein. The ground for the demurrer, that there is another action pending for the same cause, is not tenable, for the reason that the complaint does not show that fact.

The ground that the act does not define what a case of salmon is, and, as the basis of the tax is "a case of salmon," the law is indefinite and uncertain, is in my judgment, without merit. A case is an incasement of goods, wares, or merchandise ordinarily used for the transportation of their contents. A "case of salmon" has a well-defined meaning in trade and commerce as "a container of 48 one-pound cans of salmon or its equivalent." In construing a statute, the words used are to be taken at their ordinary general signification. If defendant was improperly taxed under the law, it would be a matter of proof under proper allegations; but the words as used in the statute, "a case of salmon," has a definite trade meaning, which has been acted upon by defendant for a number of years in paying their license taxes under the laws of Congress of the United States (section 259, Compiled Laws). It therefore cannot be said to be indefinite under the law under consideration. See Sutherland's Statutory Construction, par. 389.

The contention that the law is a regulatory measure, and void as being contrary to the provisions of section 3 of the Organic Act, is met by the decision of our appellate court and of the Su-

preme Court of the United States in the following cases: Alaska Fish Co. v. Smith, 255 U. S. 47, 49, 41 S. Ct. 219, 65 L. Ed. 489; Alaska Pacific Fisheries v. Territory (C. C. A.) 236 F. 59, 61; Alaska Salmon Co. v. Territory (C. C. A.) 236 F. 62, 64; Northern Commercial Co. v. Territory (C. C. A.) 289 F. 786, 788.

These cases dispose of all the contentions of defendant as to the act being contrary to section 9 of the Organic Act and contrary to section 3 thereof, and in violation of the Fourteenth Amendment, if the same applies to the territory, and that the taxes are not uniform on the same class of subjects. Only two propositions thus remain for consideration: (1) That the law grants special privileges, immunities, etc., contrary to the Organic Act; and (2) that the act in question is in restraint of interstate commerce.

By the former is presumably meant that the classification by amount of the salmon canned is unequal and unjust. This contention is settled by the case of Clark v. Titusville, 184 U. S. 329, 22 S. Ct. 382, 46 L. Ed. 569. Therein it was held that a city ordinance providing that persons in the same occupation be classified by the maximum and minimum amounts of sales, and license taxes levied according to such classifications in different amounts was valid. The court concludes in that case, saying:

"The tax in the case at bar is a tax on the privilege of doing business regulated by the amount of sales and is not repugnant to the Constitution of the United States."

In this case the tax is on the privilege of canning salmon and is regulated by the amount of business, and I can discover no difference in the application of the law, in the two cases.

The remaining contention, that the act in question is in restraint of interstate commerce, is also without merit. Under what theory this contention is advanced as a ground for demurrer is difficult to comprehend. There is nothing in the act itself limiting or affecting interstate commerce, nor is there anything in the complaint from which any interference with interstate commerce may be inferred; the only theory possible on which such contention could be based is that defendants may purchase its supplies in and import its labor from other states or foreign countries and ship its product to other states and countries, and that the licensing of the business of canning salmon interferes with such importation or exportation. The mere statement of

the contention expresses its absurdity. The tax levied is a license tax on the privilege of doing business in the territory. The defendant has the privilege of doing business in the territory on the payment of the license tax provided. It is not compelled to do business within the territory; but, if it avails itself of the privilege, it comes within the law requiring the payment of the tax. It is not required to sell its product within the territory of Alaska, or purchase its supplies or employ its labor therein. There is no restriction on it in any regard, except that it should pay the taxes levied *for the privilege of doing business within the territory.* The fact that an article is manufactured for export to another state does not make it an article of 'interstate commerce, and the intent of the manufacturer does not determine the time when the article passes from the control of the state and belongs to commerce. See Coe v. Errol, 116 U. S. 517, 525, 6 S. Ct. 475, 477 (29 L. Ed. 715).

In the cited case the court says:

"Does the owner's state of mind in relation to the goods—that is, his intent to export them, and his partial preparation to do so—exempt them from taxation? * * * There must be a point of time when they cease to be governed exclusively by the domestic law, and begin to be governed and protected by the national law of commercial regulation, and that moment seems to us to be a legitimate one for this purpose, in which they commence their final movement * * * from the state of their origin to that of their [final] destination."

In Veazie v. Moor, 14 How. 568, 573 (14 L. Ed. 545), the court says:

"Commerce with foreign nations must signify commerce which in some sense is necessarily connected with these nations, transactions which either immediately or at some stage of their progress must be extraterritorial. The phrase can never be applied to transactions wholly internal, between citizens of the same community, or to a polity and laws whose ends and purposes and operations are restricted to the territory and soil and jurisdiction of such community. Nor can it be properly concluded that, because the products of a domestic enterprise in agriculture or manufactures, or in the arts, may ultimately become the subjects of foreign commerce, that the * * * means or * * * encouragements by which enterprise is fostered and protected, is legitimately within the import of the phrase foreign commerce, or fairly implied in any investiture of the power to regulate such commerce. A pretension as far-reaching as this would extend to contracts between citizen and citizen of the same state, would control the pursuits of the planter, the grazier, the manufacturer, the mechanic, the immense operations of the collieries and mines

and furnaces of the country; for there is not one of these &ast; &ast; &ast; which may not become the subjects of foreign commerce. &ast; &ast; &ast; Such a pretension would effectually prevent or paralyze every effort at internal improvement by the several States," etc.

In Kidd v. Pearson, 128 U. S. 1, 20, 9 S. Ct. 6, 10 (32 L. Ed. 346), the court, by Justice Lamar say:

" 'Commerce with foreign countries and among the states, strictly considered, consists in intercourse and traffic, including in these terms navigation, and the transportation and transit of persons and property, as well as the purchase, sale, and exchange of commodities.' If it be held that the term includes the regulation of all such manufactures as are intended to be the subject of commercial transactions in the future, it is impossible to deny that it would also include all productive industries that contemplate the same thing. The result would be that Congress would be invested, to the exclusion of the states, with the power to regulate, not only manufactures, but also agriculture, horticulture, stock raising, domestic fisheries, mining—in short, every branch of human industry. For is there one of them that does not contemplate, more or less clearly, an interstate or foreign market? Does not the wheat grower of the Northwest, and the cotton planter of the South, plant, cultivate, and harvest his crop with an eye on the prices at Liverpool, New York, and Chicago? The power being vested in Congress and denied to the states, it would follow as an inevitable result that the duty would devolve on Congress to regulate all of these delicate, multiform, and vital interests—interests which in their nature are and must be local in all the details of their successful management. It is not necessary to enlarge on, but only to suggest, the impracticability of such a scheme, when we regard the multitudinous affairs involved, and the almost infinite variety of their minute details."

See, also, United States v. Boyer (D. C.) 85 F. 425; Haavik v. Alaska Packers Ass'n, 263 U. S. 510, 44 S. Ct. 177, 68 L. Ed. 414; Brown v. Houston, 114 U. S. 622, 632, 5 S. Ct. 1091, 29 L. Ed. 257; Cooley on Taxation (3d Ed.) p. 22.

The demurrer will be overruled.