REINKE, Respondent, v. THOMSON, Appellant

(299 N. W. 868.)

(File No. 8421.   Opinion filed September 9, 1941.)

Rehearing Denied November 29, 1941.

**Churchill & Benson,** of Huron, for Defendant and Appellant.

**Van Slyke & Agor** and **Douglas Bantz,** all of Aberdeen, for Plaintiff and Respondent.

POLLEY, P.J.  The plaintiff in this action, Ida Reinke, is the surviving widow of August Reinke, who for many years prior to his death, on the 5th day of June, 1939, was employed as a section foreman on the Dakota Division of the Chicago & North Western Railway.  Charles M. Thomson, defendant, is the Trustee of the property of the Chicago & North Western Railway Company.

Mr. Reinke lived at, and had his headquarters at, Groton, which is the end of the railway, and the section of railway of which he had charge extended south from Groton a distance of 18½ miles.  One of the implements constantly in use by Mr. Reinke in the performance of his duties as sec-

tion foreman was a small motor car, which he used to travel over his section of road and to carry such tools and appliances as were necessary in repairing railroad track, and is part of the regular equipment of every section crew. On either side of the motor car used by Mr. Reinke was a trough or tray, as it was technically called, in which certain tools suitable for track repair were carried. In addition to the above tools, Mr. Reinke had provided a box for carrying tools which are referred to in the record as "small tools".

One of Mr. Reinke's duties was to make track inspections for the purpose of finding and repairing defects in the track. The evidence shows that but one train passed over Mr. Reinke's section each week. This train came up from Doland on Wednesday. It stayed at Groton over night and returned to Doland Thursdays; and it was the regular duty of Mr. Reinke to make an inspection of the track throughout the entire length of his section between the time when the train went south from Groton on Thursdays and its return from Doland on the following Wednesday. The box of "small tools" above mentioned was bolted across the rear of the motor car and was invariably taken along when track inspection tours were made.

On the last day of May, 1939, Mr. McDermott, who was roadmaster with supervision over Mr. Reinke's section of track, and was Reinke's superior officer, met Mr. Reinke at the southerly extremity of his section, and at a conversation that took place between Reinke and McDermott, the witness Feller (Reinke's helper) was present and testified to what was said in substance as follows: Mr. McDermott directed Mr. Reinke to take the motor car he was using to Turton and take home with him another car that would be waiting for him at Turton to use while his (Reinke's) car was being repaired and repainted. "We were to send the motor car in and have it repaired and painted." "That is what Mr. Mc-Dermott told August Reinke." Where the car was to be taken to be repaired and repainted was not mentioned, nor was any time mentioned when it was to be taken to Turton.

Pursuant to these directions, Reinke, on the morning of June 3rd, said to his wife before leaving home: "I guess I will take the car down to Turton. * * * I might just as well take it down now." But he said nothing about why he was taking it. He then went to the shed where the car was kept and prepared it for the journey. Turton is about 30 miles south of Groton. Shortly after this conversation between Reinke and his wife, a witness, William Inglis, an employe of the Ferney Elevator Company saw Mr. Reinke just outside the elevator in the North Western yard. Inglis testified that: "Mr Reinke said he was going to Turton after a motor car." When I talked with him he had unbolted and removed the tool box from the handcar. Witness said he knew that Mr. Reinke ordinarily carried his tools in the box on the handcar. That was the last Mr. Inglis or any other witness saw of Reinke before he started for Turton.

The town of Ferney is on the railroad eight miles south of Groton. About a quarter of a mile south of the station house in Ferney a graveled highway crosses the railroad track. No witness saw Mr. Reinke when he left Groton or appears to have seen him as he passed the station at Ferney; but about 10:30 a. m. he was found lying on his back close to the railroad track at said crossing in a helpless condition, and the motor car was off the track, but still on its wheels, some 30 feet south of where Mr. Reinke was lying.

The highway crossing is planked, i. e. there is a plank fastened across the ends of the ties on the outside of each rail, and between the rails other planks are fastened to the ties parallel to the rails. Between the plank next to either rail and the rail itself is a space of some two inches or such a matter in width. This space is to afford room for the flange on car wheels and is known as a "flangeway."

Mr. Reinke, when found, was still alive and conscious and talked a little. He said there was a small rock in the "flangeway" on the crossing; that he did not see the rock until it was too late to stop the motor car, and when the flange on the motor car wheel struck this rock, the car jumped the track and threw him off the car. Mr. Reinke

died from the effects of this accident. His wife, the plaintiff in this action claiming that Mr. Reinke had been her sole means of support, filed a claim for compensation with the Industrial Commissioner. A trial was had by the Commissioner, and Mrs. Reinke was awarded compensation in the sum of $3,000. From such award defendant appealed to the circuit court, where a trial was had on the evidence taken by the Commissioner. The award made by the Commissioner was affirmed by the Court, and from such award defendant appeals to this court.

It is the contention of the appellant that neither the Industrial Commissioner nor the circuit court had jurisdiction of the case. This contention is based upon the theory, first, that at the time of the accident Mr. Reinke was making track inspection on his section of track which was part of an interstate line of transportation and that the Federal Court, under the Employers' Liability Act, had exclusive jurisdiction of the case; and, second, that at the time of the accident Mr. Reinke was engaged in moving the motor car in an interstate shipment and for that reason the Federal Court had exclusive jurisdiction of the case. See Federal Employers' Liability Act, U.S.C.A. Title 45, Sections 51 to 59, both inclusive. Apr. 22, 1908, c. 149, § 1, 35 Stat. 65.

The facts involved in the first of the two above propositions are covered by Finding of Fact No. 4, which reads as follows: "That some time prior to June 3, 1939, one McDermott, a roadmaster for the defendant and the immediate superior of the deceased, ordered the deceased to take the motor car which he was then using to Turton, South Dakota, which is located upon said branch line, and to leave the same there, and to bring another motor car back to Groton to use in its place; that in the morning of June 3, 1939, the deceased went to the Groton yard of the railway company, there he removed and left beside his tool shed a certain short tool box which he had always carried across the back end of his motor car and which contained the short tools which he had always used when he made track inspections; that the evidence indicates that deceased then started for

Turton, South Dakota, with said motor car, the sole purpose of said trip being to take said motor car to Turton, without any intention of making any track inspection on that date, and that the deceased did not engage in any track inspection on that day and was not so engaged at the time of his injury."

We believe that this finding of fact is fully supported by the evidence; that the evidence and the circumstances shown prove conclusively that Mr. Reinke did not intend to make any track inspections that morning, nor go prepared to make such inspections, and certainly there is no evidence that he made or attempted to make any track inspection; moreover, the evidence shows that Mr. Reinke and his helper had made an inspection of the track from Groton down to a mile south of Ferney after the train went south on Thursday, the 1st day of June, 1939.

There is much controversy in the record over the second of the above propositions. This proposition is covered by Finding of Fact No. 5, which reads as follows: "That the evidence fails to prove that the motor car being used by the deceased on June 3, 1939 was starting on any unified or continuous movement in interstate commerce, there being a lack of credible evidence to prove that anyone in authority had ordered said motor car repaired or that anyone in authority had ordered the same shipped outside of the State of South Dakota, or that the same was ever shipped in interstate commerce." The car was to be taken from Groton down to Turton and from there presumably was to be shipped at some time in the future.

The line of railroad involved in this action was used for carrying both intrastate and interstate shipments, and whether it was to be regarded as an interstate or an intrastate line of transportation at any particular or specific time depends upon whether it was engaged in intrastate or interstate business at that particular time. Hulse et al. v. Pacific & I. N. Ry. Co., 47 Idaho 561, 277 P. 426. And likewise it is the character of the particular transaction involved that determines which court has exclusive jurisdiction there-

of. If it is an intrastate transaction, it comes under the exclusive jurisdiction of the state courts. If it is an interstate transaction, it comes under the exclusive jurisdiction of the Federal Courts. This proposition is established by numerous decisions of the Federal Courts. Shanks v. Delaware, Lack. & West. R. R. Co., 239 U. S. 556, 559, 36 S. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797; Chicago, Rock Island & Pac. Ry. Co. v. Wright, 239 U. S. 548, 36 S. Ct. 185, 60 L. Ed. 431; Pedersen v. Delaware, Lack. & West. R. R. Co., 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; St. Louis, San Francisco & Texas Ry. v. Seale, 229 U. S. 156, 33 S. Ct. 651, 57 L. Ed. 1129, Ann. Cas. 1914C, 156; North Carolina R. R. Co. v. Zachary, 232 U. S. 248, 259, 34 S. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159; New York C. & H. R. R. Co. v. Carr, 238 U. S. 260, 35 S. Ct. 780, 59 L. Ed. 1298.

This reduces the determination of this case to the single question: Was Mr. Reinke engaged in interstate or intrastate business at the time he received the injury that caused his death?

■ Appellant contends that the movement of the motor car from Groton to Turton was the beginning—"the first leg"—of a movement of the motor car from Groton to Winona, Minnesota, and therefore was an interstate shipment and was within the exclusive jurisdiction of the Federal Courts. Appellant cites and relies upon New York Central R. R. Co. v. Winfield, 244 U. S. 147, 37 S. Ct. 546, 61 L. Ed. 1045, L. R. A. 1918C, 439, Ann. Cas. 1917D, 1139, to establish his contention, but that case is not decisive of this case nor is it in point. It is not claimed by the appellant that the motor car was billed or shipped under any billing or order from Groton. The only instructions Reinke had were to take the car to Turton and leave it there. How long it was to remain there or who was to make further disposition of it does not appear from the record, but until some move had been made to start it on a journey that would take it out of the state, it was not an interstate shipment nor in the jurisdiction of the Federal Courts.

No order or direction was ever issued by any person or

officer of appellant to ship the motor car to Winona, and the only claimed authority for such shipment is appellant's Exhibit 7; but this contains no such authority. Exhibit 7 consists of two pages of mimeographed material in the nature of general instructions. It was received in evidence without proper foundation being laid and might properly be ignored, but to accept it at its face value, it does not amount to an order to ship the motor car from Turton to Winona, Minnesota. The most that can be said for it is that it contains a direction that motor cars on the Dakota Division that are in need of repair shall be shipped to Winona where they are to be repaired. This does not make an interstate shipment of the car. Buckingham Transportation Co. of Colorado, Inc., v. Black Hills Transportation Co. et al., 66 S. D. 230, 281 N. W. 94. Another reason why the movement of the motor car from Groton to Turton was not any part of an interstate shipment is that when it was determined that it was not to be used any more until it had been repaired and returned, it was entirely withdrawn from use as an instrumentality of the railroad and so far as intrastate or interstate shipments are concerned, was not different from any other piece of freight that was to be moved intrastate from Groton to Turton.

But appellant contends that in moving the car from Groton to Turton, Mr. Reinke was engaged in interstate transportation because he was not only taking the old car from Groton to Turton, but he was also going after another car to be used while the old one was being repaired. This position is untenable because as we have already seen the movement of the old car from Groton to Turton was a movement in intrastate transportation and whether the car at Turton had ever been moved in interstate transportation is wholly immaterial; that movement, whatever it was, had ended at Turton. How long it had been there or whence it came does not appear. For anything that appears in the record, it had originated at Turton and had never been moved at all. The question involved as to that car is controlled by the rule promulgated in Shanks v. Delaware, Lack. & West. R. R. Co., supra [239 U. S. 556, 36 S. Ct. 189, 60 L. Ed.

436, L. R. A. 1916C, 797], as follows: "Was the employee, at the time of the injury, engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?" In our opinion, traveling after a piece of equipment eventually to be used in interstate commerce is not so related to that commerce as to be said to be "practically a part of it." Chicago, Burlington & Q. R. R. Co. v. Harrington, 241 U. S. 177, 36 S. Ct. 517, 60 L. Ed. 941; see also Utah Power & Light Co. v. Pfost, D. C. Idaho, 52 F.2d 226; Territory v. Pacific American Fisheries, 7 Alaska 160. Each case must be determined by the particular facts involved therein. Erie Railroad Co. v. Collins, 253 U. S. 77, 40 S. Ct. 450, 64 L. Ed. 790; Erie Railroad Co. v. Szary, 253 U. S. 86, 40 S. Ct. 454, 64 L. Ed. 794; Chicago & Eastern Illinois R. R. Co. v. Industrial Commission of Illinois et al., 284 U. S. 296, 52 S. Ct. 151, 76 L. Ed. 304, 77 A. L. R. 1367; New York, New Haven & Hartford R. R. Co. v. Bezue, 284 U. S. 415, 52 S. Ct. 205, 76 L. Ed. 370, 77 A. L. R. 1370; Hulse et al. v. Pacific & Idaho N. Ry. Co., supra.

Under all the facts and circumstances in this case we are of the opinion that the Industrial Commissioner and the state court had exclusive jurisdiction of the case.

The judgment appealed from is affirmed.

All the judges concur.