Before STATE INDUSTRIAL BOARD, Respondent.

CARMELLO CALABRO SALVO, Appellant, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Respondent.

Third Department, May 5, 1926.

**Workmen's compensation — interstate commerce — employee in roundhouse of railroad was killed while cleaning fireboxes of engines in service — engine on which he was at work was used indiscriminately in intrastate and interstate commerce — deceased was employed in interstate commerce at time of accident — fact that engine may have been used immediately after accident in intrastate commerce does not change rule.**

The deceased employee who was killed while at work in a roundhouse of a railroad was engaged in interstate commerce at the time of the accident, since it appears that his work consisted in cleaning fireboxes of engines in service, and that the engines brought to the roundhouse for cleaning were used indiscriminately in interstate and intrastate commerce, for employees of common carriers doing both interstate and intrastate commerce are engaged in interstate commerce where their work is concerned with railroad equipment used both in interstate and intrastate commerce.

The fact that the engine in question was immediately thereafter used in intrastate commerce does not change the rule in this case.

APPEAL by Carmello Calabro Salvo from a decision of the State Industrial Board, made on the 20th day of June, 1922, denying an award.

*Thomas F. McDermott*, for the appellant.

*Whalen, Murphy, McNamee & Creble* [*Robert E. Whalen* of counsel], for the respondent.

VAN KIRK, J. The deceased employee was working for the New York Central Railroad Company in its roundhouse in the city of Rensselaer. His employment was to clean the fireboxes of engines. All engines coming into the Albany station, which need their fireboxes cleaned, are sent across the river to the Rensselaer roundhouse. There was a so-called " pool " of engines, seven in number, which were used in and about the Albany yards. The engines of this " pool " were used indiscriminately in interstate and intrastate commerce, but chiefly in the former. There is a heavy grade between Albany and Schenectady going west and an engine from this " pool " was assigned to push heavy trains up this grade. These engines also switched the cars from one train to another. Some of the trains go through to points in western States; in some are cars destined for the Boston and Albany road and carrying traffic into the eastern States. They also switch and move cars in trains devoted to intrastate commerce. Occasionally they move ice cars, bring ice to supply the refrigerator cars which are frequently used in interstate commerce. The engines of this " pool " with regularity go to the Rensselaer roundhouse about once in twelve hours; it being necessary to clean the fireboxes thus often, else the engine will " die." It takes from twenty to thirty minutes for the cleaning of the firebox, when the engine is immediately returned to its duties in the Albany yard.

On May 25, 1921, about noon time, one of the " pool " engines, No. 579, went to the roundhouse for cleaning. The engineer and fireman left the engine. The deceased was at or on the engine when they left. When the engineer returned, the slide under the ash box was open, but the fire was not cleaned, and the deceased was not on the engine. Search was made and his body found in one of the ash pits considerably filled with water; he had been drowned. The award was denied on the ground that Paolo Salvo, the deceased, at the time he received the injuries which resulted in his death, was engaged in interstate commerce.

The deceased was employed, not to work upon a particular engine, but to clean the fireboxes of engines as they were brought to the roundhouse indiscriminately, without regard to whether engaged in interstate or intrastate commerce. He was engaged in a part of the work connected directly with interstate commerce. The engines whose fireboxes were to be cleaned were not withdrawn from service. The firebox must be cleaned that service may be continued. His service was really a plant service. Employees of common carriers doing both interstate and intrastate commerce, whose duties are similar to those of the deceased in this case, have

38

been held to be engaged in interstate commerce. In *Scelfo* v. *Buffalo, R. & P. R. Co.* (211 App. Div. 243) we held that a fire cleaner, whose duty it was also to remove and dump the ash buckets, when filled from the fireboxes, and who was injured while removing one of these buckets, was engaged in interstate commerce. In that case we cited cases of employees who were held to be engaged in interstate commerce — a man preparing sand for engines; a man engaged in removing a wreck which obstructed one of the tracks; men working in signal towers, and men operating pumping stations and water tanks to supply water for engines. In *Stone* v. *New York Central R. R. Co.* (211 App. Div. 638) we held that a man whose duty it was to grease and lubricate engines, who was injured while cleaning his hands after preparing the lubricant, was engaged in interstate commerce. This case at bar is rightly distinguished from those cases where an instrument of commerce had been withdrawn from service for repairs or for some other purpose. The engine in this case was no more withdrawn from service than an engine which stops to fill its water tank or one which stops to take on coal for fuel, or one whose wheel boxes are greased and inspected while stopping at a station. It would be impossible to separate the duties of this deceased employee between the cleaning of fireboxes of engines which had just come from an interstate service and of those which had just come from an intrastate service. The employee knew no distinction in the engines, or the service from which an engine came; he was cleaning the fire for service on the road. It would be an unsubstantial distinction in respect to his services to say that it was interstate or intrastate, depending upon whether the engine which happens to come to him is immediately destined to move in the Albany yard an interstate car or an intrastate car. Were such a distinction made an injured employee, working for a carrier which was carrying on both kinds of commerce, would be in a helpless condition and hopeless of determining in what court to seek redress for injuries sustained. The courts have refused to make artificial and unsubstantial distinctions which result in inconsistencies and mistakes and at times in consequent loss of remedies. Where the services are intimately related to interstate commerce and " there is an element of interstate commerce in a traffic or employment, it determines the remedy of the employee." (*Stone Case, supra,* citing *Philadelphia & Reading R. Co.* v. *Polk,* 256 U. S. 332, 334; *Erie R. R. Co.* v. *Szary,* 253 id. 86, 89.) We do not think that whether or not the engine upon which the deceased was employed when he met his death had been assigned immediately to interstate commerce determines the character of his employment. He was engaged in

work so directly connected with interstate commerce and so intimately related thereto and so necessary therefor as not to be distinguished therefrom.

The decision should be affirmed.

Decision unanimously affirmed.