In the Matter of the Claim of Muriel Louise Leslie and Another, Respondents, against The Long Island Railroad Company, Appellant.

State Industrial Board, Respondent.

*Workmen's compensation — interstate commerce — deceased employee was employed in roundhouse of railroad — injury was suffered while tightening nut on engine — engine was regularly used on runs carrying interstate commerce — at time of accident engine was in roundhouse between runs — decedent was not engaged in interstate commerce.*

Appeal from an award of the State Industrial Board made on January 5, 1927.

Award affirmed, with costs to the State Industrial Board. Cochrane, P. J., McCann, Davis and Whitmyer, JJ., concur; Van Kirk, J., dissents, with an opinion.

Van Kirk, J. (dissenting). The deceased, while engaged in the regular course of his employment, was injured February 23, 1925, about two-fifteen in the afternoon. Compensation was paid to him for disability. He died May 7, 1925. A claim for death benefits was filed, claiming causal relation between his injuries and death. There is evidence in the case sufficient to justify the finding that his death was the result of his injuries. The appellant contends that, at the time he received his injuries, deceased was employed in interstate commerce and a compensation award could not be granted. That in his lifetime disability compensation was paid is not a waiver of this defense. The proceeding to collect for disability is entirely distinct from that to collect death benefits. (*Snow* v. *U. S. R. R. Administration,* 209 App. Div. 308.) When injured the deceased was tightening a nut upon a locomotive; the wrench slipped and the back of his hand was cut. This locomotive had a regular daily run. In the morning it went from Greenport to Mount Morris, which it reached about ten-thirty o'clock. There it was placed in the roundhouse. About five o'clock in the afternoon it returned to Greenport, the distance each way being about eighty-two miles. It was while the engine was in the roundhouse that the injuries were received. The question presented is the nature of the employment of deceased at the time he sustained his injuries. (*Illinois Central R. R. Co.* v. *Behrens,* 233 U. S. 473.) If he was engaged in transportation or work so closely related thereto as to be practically a part thereof, then relief must be had under the Federal Employers' Liability Act.* (*Shanks* v. *D., L. & W. R. R. Co.,* 239 U. S. 556, 558.) The deceased was not engaged directly in any movement of commerce; he was working upon an instrument used by his employer in both interstate and intrastate commerce. While the employer's line was entirely within the State of New York, this engine regularly drew a passenger train in which was an express car which carried express packages not only between points in the State of New York but from points in the State to points in other States and also from points in other States to points in this State. On the afternoon run of the day deceased was injured there was in the express car a package of express from Pennsylvania and another package from Florida and these were delivered at Farmingdale on the employer's line. The express records showed the points from which these packages came and to which they were delivered.

---

* See 35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143, now U. S. Code, tit. 45, § 51 *et seq.*— [Rep.

The express messenger testified these packages could have come only from another carrier, unless they had been stolen. "When we have a waybill number on an article it has to come through express channels and no outsider can have his hands on it. It is delivered in an express car with an express messenger, delivered at the terminal, and then turned over to one of our cars." We think there was evidence that the train to which this locomotive was assigned on the afternoon of the accident did carry interstate commerce. (See *Phila. & Read. R. Co.* v. *Hancock*, 253 U. S. 284, 285.) The locomotives on this line were used indiscriminately in interstate and intrastate commerce. The question is then whether the work being done by the deceased when he received his injuries upon this locomotive was work so closely related to interstate commerce as to be practically a part of it. If this locomotive had merely stopped at a station and an inspector, while tightening up a bolt on a car, had received injuries, the engine to go on with the train, the services would be rendered in interstate commerce. This would be but an interrupted service. But if it had been withdrawn from service for repairs, not to be used again until the repairs were completed and an assignment to a particular service made, and the injuries had been received while making such repairs, the service would not be in interstate commerce. This would be a completed service and a withdrawal from commerce. We do not think this locomotive was "withdrawn from commerce" in the usual meaning of that expression. It had completed its morning run and was laid over to await the hour for its next regular run. It was placed in the roundhouse, a place not for making known needed repairs, but for inspection and the making of such minor repairs or adjustments as the inspector found should be made. The roundhouse is the place where the locomotives are stalled during a lay-over, an interval in regular service. In this case the inspector discovered that a nut should be tightened and deceased was called to tighten it. This was an ordinary running repair, not a shop repair. It required only such work as readily could be done at stations or on side tracks or in roundhouses during stops or lay-overs. The work was so closely related to commerce as to be practically a part of it. (See *Industrial Accident Commission* v. *Davis*, 259 U. S. 182, 187.) Such inspection and minor repairs were necessary to insure safe service; making them " was in the nature of a duty resting upon the carrier." It was a part of the interstate commerce in which the carrier was engaged. (*Pedersen* v. *D., L. & W. R. R. Co.*, 229 U. S. 146, 151.) It has been held that, if the work being done is in preparing a locomotive for an interstate trip, it is a service in interstate commerce, although the locomotive has not yet been coupled to the train it is to draw. (*New York Central & H. R. R. R. Co.* v. *Carr*, 238 U. S. 260; *North Carolina R. R. Co.* v. *Zachary*, 232 id. 248, 260.) The work being done by deceased when he sustained his injuries was in preparation for the service to which the locomotive had been definitely assigned. That it was not known whether express from another State would be carried on the afternoon run cannot change the nature of the work. This locomotive was engaged in both classes of commerce indiscriminately. (*Salvo* v *New York Central R. R. Co.*, 216 App. Div. 592, 594; *Stone* v. *N. Y. C. R. R. Co.*, 211 id. 638.) There is no dispute of fact in the case and the nature of the service being rendered at the time the injuries were sustained presents a question of law only. (*Phila. & Read. R. Co.* v. *Hancock*, 253 U. S. 284, 285.) The award should be reversed and the claim dismissed.