FRED W. BARRY. Appellant, *v.* BOSTON AND MAINE RAILROAD,
                         Respondent.

Third Department, May 16, 1928.

Railroads — injury to employee — Federal Employers' Liability Act —
    plaintiff's work was to keep fires in unassigned engines — he boarded
    engine that had just left interstate traffic and was to go out immediately
    in same traffic — fireman was working on engine and plaintiff waited —
    engineer came to engine and directed plaintiff to move it — air was off
    and plaintiff could not stop engine — he jumped and was injured —
    plaintiff was employed in interstate traffic — he may recover though
    negligent since engineer was negligent also — abandonment of work
    question for jury.

The plaintiff, an employee of the defendant railroad, was engaged in interstate
    commerce when he suffered injuries for which he seeks to recover under the
    Federal Employers' Liability Act and is entitled to damages though he may have
    been negligent, since it appears that his superior, an engineer, was negligent
    also.

The evidence shows that the plaintiff's regular work was to keep fires in unassigned
    engines; that he went to an engine which had been taken from interstate traffic
    and was about to be returned to the same traffic; that the fireman was working
    thereon and plaintiff waited to perform his own work; that the engineer came
    along and directed him to move the engine; that he started to move the engine
    when it was discovered that the air was off and as the engine was headed toward
    a turntable pit, he jumped and suffered injuries. The engineer was in absolute
    charge and it was his duty to see that the air was on the engine before he directed
    its movement. Even though the plaintiff may have been negligent in failing
    to observe the air gauge, he may recover since the engineer was likewise negligent.

It was a question of fact for the jury whether the temporary relaxation and con-
    versation with the fireman while plaintiff was waiting for the fireman to finish
    his work, immediately followed by resumption of work by the plaintiff, con-
    stituted an abandonment of his work.

HINMAN, J., and VAN KIRK, P. J., dissent, with opinion.

APPEAL by the plaintiff from a judgment of the Supreme Court,
entered in the office of the clerk of the county of Saratoga on the
17th day of December, 1927, and from an order entered in said
clerk's office on the same day.

*Leary & Fullerton* [*Edward W. Barrett* and *Walter A. Fullerton*
of counsel], for the appellant.

*Jarvis P. O'Brien,* for the respondent.

HILL, J. The action was brought to recover for damages as
provided in the Federal Employers' Liability Act. Plaintiff was
employed by defendant in its yard at East Deerfield, Mass. It was
his duty to keep the fires on unassigned engines. When he first
saw the engine which caused his injury, there were no chains on

the wheels, which indicated that it was ready to go out.    He got aboard to perform his usual work, but finding the fireman raking the fires, he sat down upon the engineer's seat across the boiler from him.    At that time the engineer was not in sight.    Later he came into view, and directed plaintiff to move the engine to permit the oiling of " the witches."    Plaintiff moved the necessary lever, and while so doing the fireman said " be careful, there is no air on," but the engine had started and neither the plaintiff nor the fireman was able to stop it.    It was headed toward a turn-table pit.    Plaintiff jumped, breaking his ankle.    Defendant's motion for a nonsuit and dismissal of the complaint upon the ground that plaintiff was not acting within the scope of his employ-ment when he moved the engine, and upon the further ground that the sole cause of the accident was the failure of plaintiff to see that there was air to operate the brakes before he started it, was granted.    The learned trial justice said there was no proof that the engineer knew plaintiff was in the cab; that he did know the fireman was there, and supposed he was giving the direction to him.    If this circumstance mentioned by the court is determi-native of plaintiff's right to recover, he is entitled to the most favorable inference that can be drawn from the evidence.    Plaintiff says the engineer was not in sight when he first got on the engine, but later came into view.    He was asked this question, " And he told you to move the engine forward so that he could oil the witches?    A. Yes."    Again on cross-examination he said: " When the engineer hollered up to me —."    This would indicate that the instructions were given to the plaintiff.

It is stipulated that the last previous run of this locomotive was in interstate commerce and that at the time of the accident it " was in charge of Engineer Davis and Fireman Smith."    It was being prepared to draw a train containing interstate cars.    While it was being oiled, inspected and prepared for such trip, it was engaged in interstate traffic.    (North Carolina Railroad Co. v. Zachary, 232 U. S. 248, 260.)    The defendant argues that plaintiff alone was negligent because he started the engine without looking directly in front of him at the gauge that indicated there was no air to operate the brakes.    We may concede that such conduct was negligent, but if the engineer also was negligent, plaintiff can recover.    This engine was in charge of the engineer.    It could only be moved when he directed.    A rule of the company offered in evidence provides: " The engineman is personally responsible for every movement of the engine when in service."    It was a negligent act to direct the movement of this engine without affirmatively knowing that it could be done with safety.    " When several

employees of an interstate commerce carrier participate in careless operation of a train and death results to one of them, the statute imposes liability upon the carrier. A trainman killed in a collision may be found to have been negligent, yet the carrier is not absolved from blame, when the dispatcher also is at fault. (*Union Pac. R. R. Co.* v. *Hadley*, 246 U. S. 330.) " (*Caldine* v. *Unadilla Valley Railway Co.*, 246 N. Y. 365, 368.)

Plaintiff's employment required him to watch the fires on the engines standing in the yard. Some of them, including the one in question, were engaged in interstate commerce. His regular employment brought him within the provisions of the Federal act. (*Knowles* v. *N. Y., N. H. & H. R. R. Co.*, 223 N. Y. 513; *Erie Railroad Co.* v. *Szary*, 253 U. S. 86; *Salvo* v. *N. Y. Central Railroad Co.*, 216 App. Div. 592; *Pedersen* v. *D., L. & W. Railroad Co.*, 229 U. S. 146.)

The evidence does not disclose whether plaintiff had been seated in the engine seconds or minutes. It was a question of fact for the jury whether this temporary relaxation and conversation with a coemployee, immediately followed by an act in aid of the business of his employer, was an abandonment of his work. His superior, so far as the operation of the engine was concerned, directed him to perform an act in furtherance of an interstate movement of freight. There was no rule or requirement that he should not obey such direction. The negligent act of the engineer was imputable to the master. (*McCarthy* v. *Pennsylvania R. R. Co.*, 189 N. Y. 170.)

The judgment and order should be reversed on the law and facts and a new trial granted, with costs to appellant to abide the event.

DAVIS and HASBROUCK, JJ., concur; HINMAN, J., dissents, with an opinion in which VAN KIRK, P. J., concurs.

HINMAN, J. (dissenting). Plaintiff was employed by the defendant as a fire watcher. Previously he had been a locomotive fireman and at times he had been assigned to be a hostler at the ash pit. He knew something about operating a locomotive. At the time of the accident his duties were solely those of a fire watcher. He and his physician were the sole witnesses in the case and the latter testified only as to the injuries. Plaintiff testified that his duties as fire watcher consisted solely in seeing that the fires on engines in the yard were kept up, that steam was kept at proper pressure and that there was a proper amount of water in the engine. It was his duty to board idle engines and attend to the fire, steam and water. It was no part of his duty to operate a locomotive. On the morning in question he got on board of an engine which

he thought was " idle " but found the fireman there attending to it because it was about to start upon an interstate journey. He admits that under those circumstances he had no further duty to perform on that engine but that he sat down in the cab and talked to the fireman about some repairs to an automobile. He was doing nothing related to his duties. The plaintiff, on direct examination, testified as follows: " Q. When you first got on he [the engineer] was not in sight? A. No, sir. Q. As you sat there did he come in sight? A. Yes. Q. What did he say? A. He said to move the engine forward so he could oil up the witches. Q. What are the witches? A. I don't quite really know myself. Q. But that was the engineer of this engine? A. Yes, sir. Q. And he told you to move the engine forward so that he could oil the witches? A. Yes. Q. And what did you do? A. I pushed the reverse lever forward. * * * Q. Your engineer Davis told you to move it forward? A. The engineer hollered up to move the engine forward. The Court: And the fireman was in the cab at the time? The witness: Yes, he was." On cross-examination the plaintiff testified: " Q. So that you had nothing to do with it [the engine] — you saw then that you had nothing to do with it? A. When the engineer hollered up to me — By the Court: Q. You saw the fireman raking the fire? A. Yes. Q. Didn't you know then you had nothing to do if the fireman was in charge? A. I don't quite understand it." That is all the testimony there is as to what occurred, leading up to the act of plaintiff in assuming to obey an order of the engineer. The engine started when plaintiff threw the lever forward and as there was no air on, he could not stop it. The fireman jumped and so did plaintiff, with the result that plaintiff injured himself and sues for such injuries.

The nonsuit and dismissal was properly granted. The only allegations of negligence relied on were (1) failure to have air pressure on the brakes; (2) failure to warn plaintiff there was no air, and (3) failure to have chains under the drivers. Assuming that there was negligence in one or more of those particulars, that negligence was not proximate. It was the fact that the engine was started forward while in that condition through the act of the plaintiff in moving the lever that proximately caused the trouble. Plaintiff's act was a new and intervening cause without which the accident would not have happened. The conditions complained of were harmless until the plaintiff acted.

So the sole question is whether plaintiff, who was not engaged in any duty assigned to him but simply visiting with the fireman, was subject to the order of the engineer to move the engine forward and was in fact ordered by the engineer to do so. There was

absolutely no evidence that the engineer was plaintiff's superior and authorized to order plaintiff to start the engine. The proof is that the fireman was required to take his orders from the engineer. Plaintiff was not even acting fireman. The regular fireman was there. Moreover there is no proof that the engineer saw the plaintiff or knew he was there. The testimony is that the engineer, who was on the ground, " came in sight " and " hollered up to move the engine forward." That the engineer came in sight of the plaintiff is no proof that the engineer saw and recognized the plaintiff. The plaintiff replied " yes " to the question of his counsel " And he told you to move the engine forward so that he could oil the witches? " In the absence of proof that the engineer saw the plaintiff or even knew that he was there or proof that the engineer was, at the time, so stationed that he could see and distinguish the plaintiff from the fireman, the answer of the plaintiff to that question was a mere conclusion. It is just as fair an inference, if not more probable, that the engineer addressed his order to the fireman, whose clear duty it was to obey. The jury could not be permitted, under the circumstances and the testimony, to speculate that the order was addressed to the plaintiff, who had no such duty to operate the engine. The jury would have had to infer that the engineer had the right to command the plaintiff to do it, that he saw the plaintiff sitting there and that he directed his command to the plaintiff. Since the jury could not be permitted to draw all such inferences, piled one upon the other, there was no question for the jury on this vital issue in the case and the nonsuit was right.

The order and judgment should be affirmed, with costs.

VAN KIRK, P. J., concurs.

Judgment and order reversed on the law and facts, and new trial granted, with costs to the appellant to abide the event.