CLARENCE BEZUE, Respondent, v. THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Appellant.

(Argued May 19, 1931; decided June 2, 1931.)

*E. R. Brumley* and *John M. Gibbons* for appellant. The evidence did not justify the ruling of law made by the trial court that the plaintiff was engaged in interstate commerce within the meaning of the Federal Employers' Liability Act. (*Illinois Cent. R. R. Co.* v. *Behrens,* 233 U. S. 473; *Shanks* v. *Del., Lack. & West. R. R. Co.,* 239 U. S. 556; *Minneapolis & St. Louis R. R. Co.* v. *Winters,* 242 U. S. 353; *Chicago, K. & S. Ry. Co.* v. *Kindlesparker,* 246 U. S. 657; *Industrial Comm.* v. *Davis,* 259 U. S. 182; *Comando* v. *Erie R. R. Co.,* 299 Fed. Rep. 1022; *Knowles* v. *N. Y., N. H. & H. R. R. Co.,* 223 N. Y. 513; *Erie R. R. Co.* v. *Winfield,* 244 U. S. 170; *Conklin* v. *N. Y. Cent. R. R. Co.,* 238 N. Y. 570; 266 U. S. 607; *Leslie* v. *Long Island R. R. Co.,* 222 App. Div. 702; 248 N. Y. 511; *Morini* v. *Erie R. R. Co.,* 227 App. Div. 822; 253 N. Y. 539; *Parsons* v. *Delaware & Hudson Co.,* 167 App. Div. 536; 216 N. Y. 710; *Larkin* v. *Industrial Comm.,* 208 Pac. Rep. 500; *New Orleans & N. E. R. Co.* v. *Beard,* 128 Miss. 172; *Hiser* v. *Davis,* 234 N. Y. 300; *Tepper* v. *N. Y., N. H. & H. R. R. Co.,* 238 N. Y. 423; *Phila. & Read. Ry. Co.* v. *Di Donato,* 256 U. S. 327; *New York Cent. R. R. Co.* v. *Marcone,* 281 U. S. 345; *Onley* v. *Lehigh Valley R. R. Co.,* 36 Fed. Rep. [2d] 705; 281 U. S. 743; *Illinois Central R. R. Co.* v. *Peery,* 242 U. S. 292; *Phila. & Read. Ry. Co.* v. *Polk,* 256 U. S. 332; *Erie R. R. Co.* v. *Welsh,* 242 U. S. 303.)

*Thomas J. O' Neill* and *Charles D. Lewis* for respondent. Plaintiff was engaged in interstate commerce as matter of law. (*Illonardo* v. *Erie R. R. Co.,* 103 N. J. L. 4; *New York Central R. R. Co.* v. *Marcone,* 281 U. S. 345;

*Salvo* v. *New York Cent. R. R. Co.,* 216 App. Div. 592; *Oglesby* v. *St. Louis-San Francisco Ry. Co.,* 218 Mo. 79; 277 U. S. 587; *Lusk* v. *Bandy,* 76 Okla. 108; *D., L. & W. R. R. Co.* v. *Yurkonis,* 220 Fed. Rep. 429; *N. Y. C. R. R. Co.* v. *Porter,* 249 U. S. 168; *So. Ry. Co.* v. *Puckett,* 244 U. S. 371; *Erie R. R. Co.* v. *Welsh,* 242 U. S. 303; *Pederson* v. *D., L. & W. R. R. Co.,* 229 U. S. 146; *Quinn* v. *Central N. E. Ry. Co.,* 218 App. Div. 858.) Plaintiff was engaged as an unskilled laborer at defendant's maintenance roundhouse in work so closely related to interstate commerce as to be a part of it. (*Illonardo* v. *Erie R. R. Co.,* 103 N. J. L. 4; *N. Y. C. R. R. Co.* v. *Marcone,* 281 U. S. 345; *Salvo* v. *N. Y. C. R. R. Co.,* 216 App. Div. 592; *St. Louis R. R. Co.* v. *Seale,* 229 U. S. 156; *Knowles* v. *N. Y., N. H. & H. R. R. Co.,* 223 N. Y. 513; *Erie R. R. Co.* v. *Winfield,* 244 U. S. 170.)

HUBBS, J. This is an action to recover damages growing out of injuries received by the respondent while in the service of the appellant. The action is under the Federal Employers' Liability Act (Act of April 22, 1908, 35 Stat. at L. 65, ch. 149, as amd. by act of April 5, 1910, 36 Stat. at L. 291, ch. 143).

The respondent at the time in question was employed by the appellant as a member of an unskilled labor gang at appellant's maintenance round-house and engine terminal at Maybrook, N. Y. Part of the time he operated a small portable electric truck with a crane. He also assisted in general maintenance work, oiled locomotives, filled grease boxes, assisted in adjusting couplers, brake-shoes, pressure tanks, rolling wheels and in all other work required of an unskilled laborer in and about the round-house. He also cleaned windows, operated coal pockets, dumped coal and did whatever work of that nature he was called upon to do. Some of the jobs which he was directed to do would take only a few minutes, others a few hours. He was continually moved from one kind of

work to another. He did whatever he was directed to do by his superior.

Nearly all locomotives which ran in and out of the round-house were used exclusively in interstate commerce although a few locomotives which were not so used were brought in there for minor repairs. All locomotives underwent a boiler wash every thirty days. That work was done at the round-house and at the same time they were inspected and minor repairs made. The round-house was not used for the purpose of making extensive repairs.

On August 23, 1929, locomotive No. 3221 arrived at the round-house. It was a locomotive used exclusively in interstate commerce. Between the date of its arrival and September 2d, its boiler was washed and certain repairs were made on it. In doing that work it was necessary to remove two driving wheels. On the latter date, the respondent was called upon to help move the wheels by hand from a certain lathe to the engine. While engaged with other workmen in rolling one of the wheels, he was injured by being caught under the wheel which tipped over while being moved. He had been engaged in that particular work, part of the time, for about two hours before he was injured.

The sole question presented upon this appeal is, was the respondent engaged in interstate commerce at the time and place of the accident or in work so closely related to it as to be practically a part of it?

The round-house is an essential part of the railroad's system, necessary in the operation of the road, and in carrying on interstate commerce. It is part of the plant required in keeping the locomotives in repair and in a proper condition to operate successfully in interstate commerce. The fact that some work is done on locomotives engaged in intrastate commerce, does not deprive it of its character as an essential instrumentality of interstate commerce any more than the running of intrastate

trains over the roadbed of the appellant's road deprives it of its character as a track used in interstate commerce.

The respondent was engaged in a plant service. He worked indiscriminately upon engines engaged in interstate or intrastate commerce. He also did work necessary to keep the plant in proper order and condition to carry on the work. Employees engaged in keeping tracks, bridges, ash pits and boilers which are used in both kinds of commerce in proper order and condition to maintain their effectiveness are engaged in each of them, are covered by the act and it matters not that at the moment of injury an employee was temporarily at work on a locomotive or some other instrumentality not engaged at the time in interstate commerce. (*Erie R. R. Co.* v. *Collins*, 253 U. S. 77; *Pedersen* v. *D., L. & W. R. R. Co.*, 229 U. S. 146; *Grybowski* v. *Erie R. R. Co.*, 88 N. J. L. 1; affd., 89 id. 361; *Illonardo* v. *Erie R. R. Co.*, 103 N. J. L. 4; affd., 103 id. 698; *Lindstrom* v. *N. Y. C. R. R. Co.*, 186 App. Div. 429; affd., 230 N. Y. 551; *Salvo* v. *N. Y. C. R. R. Co.*, 216 App. Div. 592; *Oglesky* v. *R. R. Co.*, 318 Mo. 79; certiorari denied, 277 U. S. 587.)

In *Shanks* v. *D., L. & W. R. R. Co.* (239 U. S. 556, 558) the Supreme Court stated the general rule for determining when an employee is engaged in interstate commerce within the meaning of the act: "Having in mind the nature and usual course of the business to which the act relates and the evident purpose of Congress in adopting the act, we think it speaks of interstate commerce, not in a technical legal sense, but in a practical one better suited to the occasion, * * * and that the true test of employment in such commerce in the sense intended is, was the employe at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it." Within the principle stated the respondent was at the time of his injury "engaged in interstate transportation or in work so

closely related to it as to be practically a part of it." (*N. Y. C. R. R. Co.* v. *Marcone*, 281 U. S. 345; *Erie R. R. Co.* v. *Szary*, 253 U. S. 86; *Matter of Guida*, 183 App. Div. 822; affd., 224 N. Y. 712; *Hiser* v. *Doris*, 234 N. Y. 300.)

Unless the act is given practical construction the condition of injured unskilled employees engaged in work which changes at short intervals would be extremely unsatisfactory. At one moment such an employee might be engaged in working on a locomotive engaged in interstate transportation and immediately thereafter employed on one engaged in intrastate transportation.

If required to determine, in case of injury, whether to proceed under the Federal act or the State Workmen's Compensation Act, there would be danger that when he proceeded under one he would lose his rights under the other and if mistaken in proceeding under one act, all right to recover for the injury might be lost, as the time to proceed under the other might meanwhile have expired. "A rather abrupt transition it would seem at first blush." (*Erie R. R. Co.* v. *Collins, supra.*)

In that case the court explained and distinguished the cases in the United States Supreme Court which have been cited as sustaining the contention that the nature of the work being done at the very time of the accident is the determining factor.

We have reached the conclusion that the maintenance round-house was a necessary part of the appellant's plant, essential in its business of carrying on interstate commerce, that the maintenance and operation of the round-house was in aid of such commerce and that the work of the respondent was so closely related with interstate transportation that it constituted a part of it.

We find it unnecessary to determine whether at the time of the accident the locomotive being repaired had been so withdrawn from service that it was not in use in interstate commerce.

There was no conflict in the evidence in regard to the

services performed by respondent. The trial court, therefore, properly decided as a matter of law that the respondent was covered by the act.

The judgment should be affirmed, with costs.

O'BRIEN, J. (dissenting). For twelve days this locomotive, with driving wheels and other parts removed to the machine shop and undergoing thirty-two items of repairs, stood idle in the round-house. During that time it remained a useless thing, incapable of allocation to commerce of any kind. It was completely removed from service and, therefore, under the decisions of the Supreme Court, no longer an instrument of interstate commerce. An engine laid up for repairs for a duration no longer than three days ceases to be such an instrument. Its character is not affected by the fact that on the day before its cessation from actual use it was employed in commerce between the States and that immediately upon its restoration it might again be engaged in the same traffic. (*Minneapolis & St. L. R. R. Co.* v. *Winters*, 242 U. S. 353.) Equipment, accustomed to be used exclusively in such operations, when partially dismantled for repairs over a considerable length of time, is deemed to be withdrawn from service. (*Industrial Accident Comm.* v. *Davis*, 259 U. S. 182.) This court's opinion in the case before us does not otherwise hold. The majority deem it unnecessary to determine the question.

Since the object upon which plaintiff was engaged at the time of his injury did not then constitute a medium through which any kind of commerce could be conducted, difficulty insuperable as it seems to me, is encountered in allotting to him a place in transactions affecting interstate commerce. The character of his employment on other occasions is immaterial, says the Supreme Court, and the true test relates to the nature of service rendered by him when his injury is suffered. (*Illinois Cent. R. R. Co.* v. *Behrens*, 233 U. S. 473, 478; *Shanks* v. *D., L. &*

*W. R. R. Co.*, 239 U. S. 556, 558.) The general rule as announced in the *Shanks* case is quoted in this court's opinion on this appeal but its application by the Supreme Court in that case now requires, in my view, a similar application by us. Shanks was a mechanic, generally but not exclusively, employed in the repair of locomotives used in interstate transportation. At the time of his injury he was engaged in relocating a shaft in the shop which transmitted power to machinery for repairing engines used in interstate transportation. The Supreme Court, affirming the judgment of this court, decided that his work was too remote from interstate transportation to be practically a part of it. In the present case, plaintiff for two hours had worked on the driving wheels of a locomotive which for twelve days was entirely separated from any activity in respect to transportation. Not only had these parts been removed from the engine and the round-house but they had been taken to the " back shop " and had not yet been again attached to the engine. The rule in the *Shanks* case has been applied by this court in *Conklin* v. *N. Y. C. R. R. Co.* (238 N. Y. 570) and *Matter of Morini* v. *Erie R. R. Co.* (253 N. Y. 539). Such decisions as *Erie R. R. Co.* v. *Collins* (253 U. S. 77) and *Erie R. R. Co.* v. *Szary* (253 U. S. 86), cited in the prevailing opinion, are readily distinguishable. There the workmen at the time of their injuries were employed in duties directly affecting both interstate and intrastate transportation. Here plaintiff's work had no relation to commerce of either kind. His energies were directed toward an object which was not an instrument of commerce. Neither can I see the application to these facts of the principle controlling the decision in *N. Y. C. R. R. Co.* v. *Marcone* (281 U. S. 345), a case cited in the prevailing opinion. The engine in that case, unlike the one now under consideration, had not been withdrawn from service. It had been temporarily run into the round-house and no repairs were made upon it. Simply it was

oiled, and the deceased had completed his work on it only a few minutes before his death.

CARDOZO, Ch. J., POUND, CRANE and LEHMAN, JJ., concur with HUBBS, J.; O'BRIEN, J., dissents in opinion in which KELLOGG, J., concurs.

Judgment affirmed.