## NEW YORK, NEW HAVEN & HARTFORD RAILROAD CO. *v.* BEZUE.

No. 263. Argued January 7, 1932.—Decided January 25, 1932.

416

*Mr. Edward R. Brumley,* with whom *Mr. John M. Gibbons* was on the brief, for petitioner.

*Mr. Thomas J. O'Neill,* with whom *Mr. Charles D. Lewis* was on the brief, for respondent.

Mr. Justice Roberts delivered the opinion of the Court.

The respondent was injured while in the employ of petitioner, an interstate carrier. He brought suit under the Federal Employers' Liability Act in the Supreme Court of New York and recovered a judgment which was affirmed by the Appellate Division and the Court of Appeals.[1] Petitioner urges that at the time of respondent's injury his work was not in interstate commerce within the intendment of the statute.

At Maybrook, New York, the westerly terminus of a branch of the railroad, petitioner maintains a roundhouse, a machine shop, a carpenter shop, and a so-called hoist building containing four tracks with two pits, a hoist of large capacity for raising engines, a lathe for repairing driving wheels, apparatus for electric welding, tool room, and electrical shop. These facilities are used largely for

---

[1] 232 N. Y. App. Div. 840, 248 N. Y. S. 926; 256 N. Y. 427, 176 N. E. 828.

servicing and repairing locomotives engaged in interstate transportation. The respondent had been employed at this terminal for about a year, at first as an engine wiper; later, and at the time of the accident, as a member of a general unskilled labor gang. His principal work was the operation of an electric truck with which he transported materials from one portion of the plant to another. By means of this truck, and sometimes without it, he was accustomed to assist in various minor repairs to locomotives brought into the terminal, such as lifting driving rods, pumps, journal boxes, draw bars, assisting in greasing, or greasing, engines, and other work of a similar nature. On the morning of September 2, 1929, he was not using the truck, but pursuant to an order of the foreman of the gang joined other workmen in removing a pair of main driving wheels from a lathe in the hoist building and rolling them along the tracks in the yard to an engine pit where they were to be installed in a locomotive which had arrived at the terminal August 23, and had been set aside for the customary boiler-wash given all engines every thirty days. Preparatory to the boiler-wash an inspection was made and orders were issued for certain work, which included the removal of the main driving wheels and shifting them to the hoist shop so that the journal might be turned, the transfer of several parts to the machine shop, the separation of the jacket from the fire-box, the replacement of some four hundred seventeen leaking bolts, the renewal of bushings, and other items requiring skilled labor. The fire was dumped, the main driving wheels and other portions needing attention were removed, and the engine was left inert and incapable of locomotion.

The boiler-wash and repairs consumed twelve days. On the ninth day, the turning of the journal on the main drivers having been completed, the respondent, on orders of his foreman, joined others of the unskilled labor gang

in removing the main driving wheels from the lathe in the hoist shop, placing them upon a track, and pushing them by hand to the turntable, which was then connected with another track onto which the men pushed the wheels preparatory to moving them to a pit in the roundhouse where they could be placed under the locomotive. During this work respondent was injured, as has been found, by the negligence of the foreman in removing a block from under the wheels.

The state court held that the terminal facilities in which respondent worked constitute a part of the railroad's system necessary to the operation of the road and to the conduct of interstate commerce; that the fact that some work is there done on locomotives engaged in intrastate commerce does not deprive the establishment of its character as an essential instrumentality of interstate commerce; that the respondent was engaged in a "plant service," and worked indiscriminately upon engines engaged in interstate and intrastate commerce. The conclusion was that the nature and purpose of the plant warranted characterization of all respondent's work, of whatever nature, as in interstate commerce.

The test thus applied is broader than our decisions justify. All work performed in railroad employment may, in a sense, be said to be necessary to the operation of the road. The business could not be conducted without repair shop employees, clerks, janitors, mechanics, and those who operate all manner of appliances not directly or intimately concerned with interstate transportation as such, or with facilities actually used therein. But we have held that the mere fact of employment does not bring such employees within the Act. *Delaware, L. & W. R. Co.* v. *Yurkonis,* 238 U. S. 439; *Chicago, B. & Q. R. Co.* v. *Harrington,* 241 U. S. 177; *Illinois Central R. Co.* v. *Cousins,* 241 U. S. 641; *New York Central R. Co.* v. *White,* 243 U. S. 188, 192; *Industrial Accident Comm.* v.

*Davis,* 259 U. S. 182, 187; *Chicago & N. W. Ry. Co. v. Bolle, ante,* p. 74.

The criterion of applicability of the statute is the employee's occupation at the time of his injury in interstate transportation or work so closely related thereto as to be practically a part of it. *Shanks* v. *Delaware, L. & W. R. Co.,* 239 U. S. 556, 558; *Chicago & E. I. R. Co.* v. *Industrial Comm., ante,* p. 296. Under the circumstances of this case, whether respondent is within the Act must be decided not by reference to the kind of plant in which he worked, or the character of labor he usually performed, but by determining whether the locomotive in question was, at the time of the accident, in use in interstate transportation or had been taken out of it. The length of the period during which the locomotive was withdrawn from service and the extent of the repairs bring the case within the principle announced in *Industrial Accident Comm.* v. *Davis, supra,* and *Minneapolis & St. Louis R. Co.* v. *Winters,* 242 U. S. 353, stamp the engine as no longer an instrumentality of or intimately connected with interstate activity, and distinguish such cases as *New York Cent. R. Co.* v. *Marcone,* 281 U. S. 345, where the injured employee was oiling a locomotive which had shortly before entered the roundhouse after completing an interstate run.

Respondent endeavors to support the claim that here the instrumentality had not been taken out of interstate commerce, by reference to the practice of petitioner, which is that work, sometimes greater and often less in amount than in this case, is done at Maybrook in connection with the monthly boiler-wash; whereas after a locomotive has run thirty-five thousand miles, or eighteen months, it is marked for out-of-service repairs and is sent to petitioner's general repair shop at Readville, Massachusetts. The argument is that the railroad company thus recognizes that such work as is done at Maybrook in conjunction with boiler-washing is incidental and does not take the engine out of service.

We do not think this custom warrants a disregard of the proved facts, and the adoption of an artificial classification of the locomotive as one in service at the time of respondent's injury. The judgment must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*