JENNIE Y. MARTIN, DEFENDANT-APPELLANT, v. CENTRAL RAILROAD COMPANY OF NEW JERSEY, PROSECUTOR-RESPONDENT.

Submitted October 25, 1935—Decided January 31, 1936.

For the appellant, *Sidney Schwartz* and *Harvey Rolhberg.*

For the respondent, *William F. Hanlon* and *Charles E. Miller.*

The opinion of the court was delivered by

DONGES, J. This appeal seeks a review of a judgment of the Supreme Court which reversed a judgment of the Hudson County Court of Common Pleas affirming a determination of the workmen's compensation bureau, which had awarded compensation to appellant as a dependent under the Compensation act. *Pamph. L.* 1911, *ch.* 95.

The facts were stipulated. Appellant is the widow and sole dependent of Joseph Y. Martin, who was in the employ of respondent as a painter. On November 2d, 1932, it is conceded, the decedent met with an accident, arising out of and in the course of his employment, in the following manner:

"While repairing the skylight on the roof of the terminal train shed of the respondent, at Jersey City, he sustained a fall through the skylight on to the tracks, which fall caused his death."

The train shed was used by both interstate and intrastate trains, it being stipulated as follows:

"Some of these passenger trains come from out of the state, like Scranton or Easton. Pennsylvania, and some of them come from within the state, such as our seashore trains, carrying passengers in both classes of commerce."

The sole question involved is whether decedent was engaged in interstate commerce within the meaning of the Employers' Liability act of congress when he met his death. The material part of that act declares that a common carrier by railroad, while engaging in commerce between any of the several states, shall be liable in damages to any person, or his dependents, suffering injury while he is employed by such carrier in such commerce, if the injury be due to the negligence of the carrier, &c. And it has been held that when the injury or death occurs when both employer and employe are engaged in interstate commerce, the act of congress is paramount to, and exclu-

sive of, state regulation, whether there be causal negligence for which the carrier is responsible or not. *New York Central Railroad Co.* v. *Winfield,* 244 *U. S.* 147; *Erie Railroad Co.* v. *Winfield,* 244 *Id.* 170.

It becomes important, therefore, to consider the decisions of the federal court of last resort in determining the decisive question in this case.

The Supreme Court determined that "the service at which the deceased was engaged when the accident befell him falls into the category of interstate commerce," citing *Pedersen* v. *Delaware, Lackawanna and Western Railroad Co.* (1913), 229 *U. S.* 146; 57 *L. Ed.* 1125. In that case it was said: "The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged?" The workman there, with another employe, on the afternoon of his injury, acting under the direction of their foreman, was carrying from a tool car to a bridge some bolts or rivets which were to be used by them that night or very early the next morning in repairing that bridge, the repair to consist of taking out an existing girder and inserting a new one. It was necessary to pass over an intervening temporary bridge. The bridges were being regularly used in both interstate and intrastate commerce. While carrying a sack of bolts on his way to the bridge to be repaired, he was run down by an intrastate train on the intervening bridge. The court, speaking through Mr. Justice Van Devanter, held that the employe was engaged in interstate commerce.

In later cases, the same court has refused to extend the holding of that case to other situations, and would appear, to some extent, to have limited it. In *Shanks* v. *Delaware, Lackawanna and Western Railroad Co.* (1915), 239 *U. S.* 556, where the employe was engaged solely in taking down and putting into a new location in the railroad's machine shop an overhead countershaft—a heavy shop fixture—through which power was communicated to some of the machinery used in repairing parts of locomotives used in interstate and intrastate transportation, the same justice who spoke for a majority of the court in the Pederson case, said:

"Having in mind the nature and usual course of the business to which the act relates and the evident purpose of congress in adopting the act, we think it speaks of interstate commerce, not in a technical legal sense, but in a practical one better suited to the occasion (see *Swift & Co.* v. *United States*, 196 *U. S.* 375, 398; 49 *L. Ed.* 518, 525; 25 *Sup. Ct. Rep.* 276), and that the true test of employment in such commerce is, was the employe, at the time of the injury, engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?"

The opinion then cites cases where the court held that the employe was engaged in interstate commerce and others where it held that the employe was not so engaged. The court concludes:

"Coming to apply the test to the case in hand it is plain that Shanks was not employed in interstate transportation, or in repairing or keeping in usable condition a roadbed, bridge, engine, car, or other instrument then in use in such transportation. What he was doing was altering the location of a fixture in a machine shop. The connection between the fixture and interstate transportation was remote at best, for the only function of the fixture was to communicate power to machinery used in repairing parts of engines some of which were used in such transportation. This, we think, demonstrates that the work in which Shanks was engaged, like that of the coal miner in the Yurkonis case, was too remote from interstate transportation to be practically a part of it, and therefore that he was not employed in interstate commerce within the meaning of the Employers' Liability act.

In *Raymond* v. *Chicago, Milwaukee and St. Paul Railroad Co.* (1917), 243 *U. S.* 43, where a workman was injured while working as a laborer in a tunnel designed to effect a shortening of the line of an interstate railroad carrier, Mr. Chief Justice White said:

"Considering the suit as based upon the Federal Employers' Liability act, it is certain under recent decisions of this court, whatever doubt may have existed in the minds of some at the time the judgment below was rendered, that, under the facts as alleged, Raymond and the railway company were not

engaged in interstate commerce at the time the injuries were suffered, and consequently no cause of action was alleged under the act."

In *Chicago and Northwestern Railroad Co.* v. *Bolle* (1931), 284 *U. S.* 74, where an employe was injured whilst engaged in firing a stationary engine or locomotive engine as a substitute, for the purpose of producing steam used in heating a depot and other structures on railroad premises, and passenger coaches while standing in the yards, in an opinion by Mr. Justice Sutherland, it was said, after quoting the rule laid down in *Shanks* v. *Delaware, Lackawanna and Western Railroad Co., supra:*

"It will be observed that the word used in defining the test is 'transportation,' not the word 'commerce.' The two words were not regarded as interchangeable but as conveying different meanings. Commerce covers the whole field of which transportation is only a part; and the word of narrower signification was chosen understandingly and deliberately as the appropriate term. The business of a railroad is not to carry on commerce generally. · It is engaged in the transportation of persons and things in commerce; and hence the test of whether an employe at the time of his injury is engaged in interstate commerce, within the meaning of the act, naturally must be whether he was engaged in interstate transportation or in work so closely related to such transportation as to be practically a part of it.

"Since the decision in the Shanks case, the test there laid down has been steadily adhered to, and never intentionally departed from or otherwise stated. It is necessary to refer to only a few of the decisions. In *Chicago, B. and Q. Railroad Co.* v. *Harrington, supra,* an employe engaged in placing coal in coal chutes, then to be supplied to locomotives engaged in interstate traffic, was held not to have met the test. In *Illinois Central Railroad Co.* v. *Cousins,* 241 *U. S.* 641, as appears from the decision of the state court (126 *Minn.* 172; 148 *N. W. Rep.* 58), an employe was engaged in wheeling a barrow of coal to heat the shop in which other employes were at work repairing cars that had been, and were to be, used in interstate traffic. The state court held that the employe

came within the act, on the ground that the work which he was doing was a part of the interstate commerce in which the carrier was engaged, and cited *Pedersen* v. *Delaware, Lackawanna and Western Railraod Co.*, 229 *U. S.* 146. This court, however, repudiated that view and reversed in an opinion *per curiam* on the authority of the Shanks case. In *New York Central Railroad Co.* v. *White*, 243 *U. S.* 188, 192, it was held applying the test of the Shanks case, that employment in guarding tools, intended for use in the construction of a new depot and tracks to be used in interstate commerce, had no such direct relation to interstate transportation as was contemplated by the Employers' Liability act."

The court continued:

"The applicable test thus firmly established is not to be shaken by the one or two decisions of this court where, inadvertently, the word 'commerce' has been employed instead of the word 'transportation.'

"Plainly, the respondent in the present case does not bring himself within the rule. At the time of receiving his injury he was engaged in work not incidental to transportation in interstate commerce, but purely incidental to the furnishing of means for heating the station and other structures of the company. His duty ended when he had produced a supply of steam for that purpose. He had nothing to do with its distribution or specific use. Indeed, what he produced was not used or intended to be used, directly or indirectly, in the transportation of anything. It is plain that his work was not so closely related to such transportation as to cause it to be practically a part of it."

Applying the rule to the instant case, it appears that the work of repairing a skylight in the roof of a train shed, however important it might be to a proper maintenance of the structure, cannot be said to be closely related to transportation. Certainly it cannot be said to be any closer to it than the heating of a station, or the placing of coal in chutes for the use of locomotives engaged in interstate transportation. Indeed, it had no relation at all to the movement of trains, which are the means of transportation, but is merely an inci-

dent of the general business of the carrier. *New York, New Haven and Hartford Railroad Co.* v. *Bezue,* 284 *U. S.* 415.

Obviously every employe of a railroad is contributing to some extent to the success of its general business. Concededly a line must be drawn somewhere between those directly engaged in interstate transportation and those whose work is not so closely connected with it as to be a part of it. If appellant's decedent was engaged in interstate transportation, then every person whose work had to do with maintenance and operation of the terminal, porters, janitors, checkroom attendants, and the like, would also be so engaged. Bookkeepers and office employes dealing with calculations of interstate movements of freight and passengers might just as logically be said to be engaged in interstate commerce. We conclude that the work in which the decedent was engaged was not so closely related to interstate transportation as to be practically a part of it.

The judgment under review is reversed.

LLOYD, J. (dissenting), see page 349.

*For affirmance*—LLOYD, J. 1.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE. CASE, BODINE, DONGES, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, JJ. 10.